IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TWO-WAY MEDIA LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 14-1006 (RGA) |
| | ) | |
| COMCAST CABLE COMMUNICATIONS, LLC, COMCAST INTERACTIVE MEDIA, LLC, NBCUNIVERSAL MEDIA, LLC and NBCUNIVERSAL, LLC, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| TWO-WAY MEDIA LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 14-1212 (RGA) |
| | ) | |
| VERIZON SERVICES CORP. and VERIZON ONLINE LLC, | ) ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR
JOINT MOTION FOR JUDGMENT ON THE PLEADINGS**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Paul Saindon (#5110)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
psaindon@mnat.com
    *Attorneys for Defendants Comcast Cable
    Communications, LLC, Comcast Interactive
    Media, LLC, NBCUniversal Media, LLC
    and NBCUniversal, LLC*

ROSS ARONSTAM & MORITZ LLP
Benjamin J. Schladweiler (#4601)
100 S. West Street
Suite 400
Wilmington, DE 19801
(302) 576-1600
bschladweiler@ramllp.com
    *Attorneys for Defendants Verizon Services
    Corp. and Verizon Online LLC*

OF COUNSEL:

Brian Ferrall
Paven Malhotra
David J. Rosen
KEKER & VAN NEST LLP
633 Battery Street
San Francisco, CA 94111
(415) 391-5400
   *Attorneys for Defendants Comcast Cable*
   *Communications, LLC, Comcast Interactive*
   *Media, LLC*

Steven Lieberman
Derek Dahlgren
ROTHWELL, FIGG, ERNST & MANBECK, P.C.
607 14ᵗʰ Street, N.W., Suite 800
Washington, DC 20005
(202) 783-6040
   *Attorneys for Defendants NBCUniversal*
   *Media LLC, and NBCUniversal, LLC*

September 4, 2015

OF COUNSEL:

Thomas M. Dunham
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006-3817
(212) 282-5000

Kurt A. Mathas
Sarah J. Kalemeris
WINSTON & STRAWN LLP
35 W Wacker Drive
Chicago, IL 60601
(312) 558-5600

## TABLE OF CONTENTS

Page

TABLE OF CONTENTS ..................................................................................................i

TABLE OF AUTHORITIES ...................................................................................... iii

I.      NATURE AND STAGE OF PROCEEDINGS ............................................1

II.     SUMMARY OF THE ARGUMENT ...........................................................1

III.    STATEMENT OF FACTS ............................................................................2

IV.     ARGUMENT ...............................................................................................3

        A.      LEGAL  STANDARD  FOR  MOTION  FOR  JUDGMENT  ON
                THE PLEADINGS....................................................................................3

        B.      LEGAL   STANDARD   FOR   PATENT-ELIGIBLE   SUBJECT
                MATTER...................................................................................................3

V.      The Asserted Patents Are Directed to  Ineligible Subject Matter ......................4

        A.      THE '622 AND '686 PATENTS................................................................4

                1.      Alice Step 1 ....................................................................................4

                2.      Alice Step 2 ....................................................................................6

                        a)      The '622 Patent ....................................................................6

                        b)      The '686 Patent ....................................................................7

        B.      THE '187 AND '005 PATENTS................................................................9

                1.      Alice Step 1 ..................................................................................11

                2.      Alice Step 2 ..................................................................................11

        C.      THE '237 PATENT ................................................................................13

                1.      Alice Step 1 ..................................................................................13

                2.      Alice Step 2 ..................................................................................15

        D.      ALL  OF  THE  CLAIMS  OF  THE  ASSERTED  PATENTS  ARE
                LINKED TO THE SAME ABSTRACT IDEAS....................................18

VI.    CONCLUSION ...........................................................................................................20

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.,*
    728 F.3d 1336 (Fed. Cir. 2013)..................................................................................8

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
    134 S. Ct. 2347 (2014) ..................................................................................*passim*

*Appistry, Inc. v. Amazon.com, Inc.,*
    Case No. C15-311 (W.D. Wash. July 9, 2015)............................................16-17

*buySAFE, Inc. v. Google Inc.,*
    765 F.3d 1350 (Fed. Cir. 2014), (D. Del. 2013) .............................................3

*Comcast IP Holdings I, LLC v. Sprint Commc'ns Co. L.P.,*
    No. CV 12-205-RGA, 2014 WL 3542055 (D. Del. July 16, 2014)....................19

*Content Extraction and Transmission LLC v. Wells Fargo Bank Nat. Ass'n,*
    776 F.3d 1343 (Fed. Cir. 2014)................................................................... 15, 18

*CyberSource Corp. v. Retail Decisions, Inc.,*
    654 F.3d 1366 (Fed. Cir. 2011)......................................................................19

*DDR Holdings, LLC v. Hotels.com, L.P.,*
    773 F.3d 1245 (Fed. Cir. 2014)...........................................................5, 8-9, 12

*Gottschalk v. Benson,*
    409 U.S. 63 (1972) ..........................................................................................1

*Hewlett Packard Co. v. ServiceNow, Inc.,*
    Case No. 14-cv-570, 2015 WL 1133244 (N.D. Cal. Mar. 10, 2015)...................15

*Intellectual Ventures I LLC v. Manufacturers & Traders Trust Co.,*
    76 F. Supp. 3d 536, 545 (D. Del. 2014) ...........................................................4

*Intellectual Ventures I, LLC v. Motorola Mobility LLC,*
    No. CV 11-908-SLR, 2015 WL 846532 (D. Del. Feb. 24, 2015)............... 9, 17, 20

*Inventor Holdings, LLC v. Bed Bath & Beyond Inc.,*
    No. CV 14-448-GMS, 2015 WL 5000838 (D. Del. Aug. 21, 2015)....................18

*IpLearn, LLC v. K12 Inc.,*
    No. CV 11-1026-RGA, 2014 WL 7206380 (D. Del. Dec. 17, 2014) ...................19

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
  2014 WL 4364848 (E.D. Tex. Sept. 3, 2014) (Bryson, J., sitting by
  designation)...................................................................................................7

*Messaging Gateway Solutions, LLC v. Amdocs, Inc.*,
  No. CV 14-732-RGA, 2015 WL 1744343 (D. Del. Apr. 15, 2015) ......................12

*Microsoft Corp. v. i4i Ltd.*,
  131 S. Ct. 2238 (2011) .....................................................................................3

*Money Suite Co. v. 21st Century Ins. & Fin. Servs., Inc.*,
  No. CV 13-1747-GMS, 2015 WL 436160 (D. Del. Jan. 27, 2015)......................5

*MyMedicalRecords, Inc. v. Walgreen Co.*,
  No. 2:13-CV-00631-ODW SH, 2014 WL 7339201 (C.D. Cal. Dec. 23, 2014)....................13

*Netflix, Inc. v. Rovi Corp.*,
  No. 11-CV-6591 PJH, 2015 WL 4345069 (N.D. Cal. July 15, 2015) ..................16

*Novartis Pharm. Corp. v. Actavis, Inc.*,
  No. CIV.A. 12-366-RGA, 2012 WL 6212619 (D. Del. Dec. 5, 2012) ..................3

*OIP Technologies, Inc. v. Amazon.com, Inc.*,
  788 F.3d 1359 (Fed. Cir. 2015)..............................................................7, 18-19

*Open Text S.A. v. Alfresco Software Ltd*,
  No. 13-CV-04843-JD, 2014 WL 4684429 (N.D. Cal. Sept. 19, 2014)..................8

*Rubber-Tip Pencil Co. v. Howard*,
  87 U.S. 498 (1874) ...........................................................................................1

*Ubicomm, LLC v. Zappos IP, Inc.*,
  2013 WL 6019203 (D. Del. Nov. 13, 2013) (Andrews, J.) .................................16

*Ultramercial, Inc. v. Hulu, LLC*,
  772 F.3d 709, 716 (Fed. Cir. 2014).............................................................*passim*

*Walker Digital, LLC v. Google, Inc.*,
  66 F. Supp. 3d 501, 505–15 (D. Del. 2014)......................................................13

**Rules and Statutes**

35 U.S.C. § 101.......................................................................................*passim*

Fed. R. Civ. P. 12.....................................................................................3

## I.   NATURE AND STAGE OF PROCEEDINGS

Plaintiff Two-Way Media Ltd. ("TWM") filed these patent infringement actions against Comcast Cable Communications, LLC, Comcast Interactive Media, LLC (collectively "Comcast") and NBCUniversal Media LLC, and NBCUniversal, LLC (collectively "NBCUniversal") on August 1, 2014, and Verizon Services Corp. and Verizon Online LLC (collectively "Verizon") on September 19, 2014.[1] TWM is asserting five patents against Verizon and Comcast[2] and two of those patents against NBCUniversal (collectively, the "Asserted Patents").[3] All of the patents have a common parent application. Discovery has not yet begun nor has a case schedule been entered. The Defendants jointly move for judgment on the pleadings that the Asserted Patents are invalid under 35 U.S.C. § 101 because the claims of the patents are directed to patent-ineligible subject matter—*i.e.*, an abstract idea.

## II.   SUMMARY OF THE ARGUMENT

It is a bedrock principle of our patent system that "'[a]n idea of itself is not patentable.'" *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972) (quoting *Rubber-Tip Pencil Co. v. Howard*, 87 U.S. 498, 507 (1874)). The Supreme Court recently issued a landmark ruling aligning this fundamental principle with today's digital world. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014). In *Alice*, the Supreme Court held that claims that implement an abstract idea through the use of generic computer technology are not patent-eligible. *Id.* at 2358. Instead, patent claims directed to an abstract idea must include an *inventive concept*—*i.e.*, an element or combination of elements that is "sufficient to ensure that the patent in practice amounts to

---

[1]   Comcast and NBCUniversal object to being joined in C.A. No. 14-cv-1006 and reserve the right to seek separate trials.

[2]   U.S. Patent Nos. 6,434,622 (the '622 Patent); 7,266,686 (the '686 Patent); 5,778,187 (the '187 Patent); 5,983,005 (the '005 Patent); and 8,539,237 (the '237 Patent).

[3]   The '622 Patent and the '237 Patent.

significantly more than a patent upon the [abstract idea] itself." *Id.* at 2355 (internal quotations omitted).

Through four of its five Asserted Patents (the '622, '686, '005, and '187 Patents), TWM is attempting to coopt the abstract idea of monitoring the delivery of information. People have engaged in this fundamental practice for centuries—whether it is through tracking of couriers delivering a message, noting when a conversation begins and ends for purposes of billing a client, or monitoring viewership of a TV or radio program by the Nielsen company. The claims of these four Asserted Patents generically cover information delivery, recordkeeping, and monitoring without identifying specific ways—much less inventive ways—of doing so. In its fifth Asserted Patent (the '237 patent), TWM is attempting to coopt the abstract idea of securely delivering information and logging details about that delivery—an idea as old as controlling the check-out of material from a library. Accordingly, Defendants respectfully request that the Court grant judgment on the pleadings in their favor on all five Asserted Patents under 35 U.S.C. § 101.

## III.    STATEMENT OF FACTS

The Asserted Patents are continuations of an application filed on May 9, 1996. (D.I. 32, ¶ 6).[4] They "describe[] a system for transmitting, receiving, and monitoring audio and video streams over the Internet." (D.I. 32, ¶ 18). First, "incoming analog and digital audio and/or video signals are received by a central facility, which converts the analog signals to digital signals that computers can understand." *Id.* Next, the central facility "forwards [the] digitized audio and/or video signals to various computers, or servers, which then transmit the signals to users across the Internet or similar communications networks." *Id.* While the transmission is

---

[4]    For ease of the Court and the Parties, the '622 Patent (D.I. 32, Ex. 3) is used when citing to the specification. *See also* D.I. 32, ¶ 18 (referring to the "shared specification" of the Asserted Patents).

occurring, the "transmissions are monitored to ensure reliability and accuracy of gathered usage statistics." *Id.* The described monitoring uses conventional techniques. '622 Patent, Col. 15, ll. 12–24 (describing sending a *ping* to a user to verify network status); col. 15, ll. 33–42 (describing using routine logging to monitor commencement and termination).

## IV.   ARGUMENT

### A.   Legal Standard for Motion for Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Motions for judgment on the pleadings are reviewed under the same standard as motions to dismiss under Rule 12(b)(6). *Novartis Pharm. Corp. v. Actavis, Inc.*, No. CIV.A. 12-366-RGA, 2012 WL 6212619, at *2 (D. Del. Dec. 5, 2012).

The test for patent-eligible subject matter is a threshold test that is particularly appropriate for resolution under Rule 12. *See, e.g.*, *buySAFE, Inc. v. Google Inc.*, 765 F.3d 1350 (Fed. Cir. 2014), *affirming* 964 F. Supp. 2d 331 (D. Del. 2013) (granting motion for judgment on the pleadings under § 101). The standard of proof to establish the invalidity of a patent is clear and convincing evidence. *Microsoft Corp. v. i4i Ltd.*, 131 S. Ct. 2238, 2242 (2011).

### B.   Legal Standard for Patent-Eligible Subject Matter

"Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice*, 134 S. Ct. at 2354. The Court in *Alice* applied a two-step test to determine whether a claim is patent eligible. First, a court must determine whether a claim is "directed to" a patent-ineligible concept, such as an abstract idea ("*Alice* Step 1"). *Id. at* 2355. Second, if so, a court must determine whether there is nonetheless an "inventive concept"—that is, an element or combination of elements "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself" ("*Alice* Step 2"). *Id.* (alteration in

original).  To be patent eligible, "[a] claim that recites an abstract idea must include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea].'"  *Id*.  The "additional features" must be more than "well-understood, routine, conventional activities previously known to the industry."  *Id.* at 2358.

## V.      THE ASSERTED PATENTS ARE DIRECTED TO INELIGIBLE SUBJECT MATTER

### A.      The '622 and '686 Patents

#### 1.      *Alice Step 1*

The '622 Patent contains three independent claims—claims 1, 24, and 29—each of which recites the same basic three-step process: (1) noting when delivery begins; (2) verifying that the user can receive the information; and (3) noting when the delivery ends.  The claims of the '686 Patent recite very similar steps:  (1) delivering a media stream; (2) noting when the delivery ends; (3) determining how much of the media stream was delivered; and (4) logging this information for commercial purposes.  Thus, each step of both patents' claims embodies the abstract idea of monitoring the delivery of information.

The idea of monitoring the delivery of information is similar to the idea of tracking a user's spending, which this Court has deemed abstract.  *See Intellectual Ventures I LLC v. Manufacturers & Traders Trust Co.*, 76 F. Supp. 3d 536, 545 (D. Del. 2014).  Like the idea of tracking spending, the idea of monitoring the duration of, and participants in, communications is reflected in age-old business practices.  For example, since the beginning of billed telephone service, telephone companies have recorded the length of calls and the phone numbers connected.  And since the advent of commercial radio, advertisers have relied on methods of determining who was listening and to what.  The Asserted Patents themselves acknowledge as

much.[5]  Well before the Asserted Patents, monitoring communications was important for "the delivery of paid commercial messages," "assessing copyright royalties," or "determin[ing] the percentage of listeners who are interested in listening to a particular musical selection."  D.I. 32, Ex. 1 at col. 3, ll. 50–63.  Monitoring the delivery of information is "'a fundamental economic [or] conventional business practice' and therefore an abstract idea."  *Money Suite Co. v. 21st Century Ins. & Fin. Servs., Inc.*, No. CV 13-1747-GMS, 2015 WL 436160, at *3 (D. Del. Jan. 27, 2015) (citing *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256 (Fed. Cir. 2014)) (alteration in original).  Moreover, the claims here can be performed by a human with nothing more than a telephone.  Consider the following hypotheticals for claim 1 of the '622 Patent and claim 1 of the '686 Patent:

| Claim 1 of the '622 Patent | Hypothetical Telephone Conversation |
| --- | --- |
| A method for monitoring the forwarding of real-time information to at least one user having access to a communication network comprising: | An attorney provides legal advice to a client over the telephone. |
| **generating delivery-commencement indications** of real-time information forwarded to the user by means of the communication network, wherein the real-time information comprises a plurality of packets of forwarded over the communication network to the user, | When the telephone call begins, the attorney generates a delivery commencement indication—the attorney notes down the time the call started. |
| **verifying the operational status** of the user's access to the communications network during delivery of the real-time information, and | As the conversation continues, the attorney verifies the status of the client's access to the telephone line by engaging in a conversation. If the client fails to respond to a question, the attorney knows the line has been disconnected. |

---

[5]     For example, the face of the '237 Patent lists, under the References Cited section, patents describing many such systems, including a patent filed in 1951 and assigned to the A.C. Nielsen Co. titled "Monitoring system for determining listening habits of wave signal receiver users."

| Claim 1 of the '622 Patent | Hypothetical Telephone Conversation |
|---|---|
| **generating delivery-termination indications** of the real-time information forwarded to the user. | When the telephone call is over, the attorney generates a delivery termination. indication—the attorney notes the time the call concludes. |

| Claim 1 of the '686 Patent | Hypothetical Telephone Conversation |
|---|---|
| A method for metering real-time streaming media for commercial purposes, said method comprising: | An attorney provides legal advice to a client over the telephone. |
| **forwarding a real-time media stream** from an intermediate server towards a user device, wherein said forwarding of said real-time media stream from said intermediate server to said user device is via unicast, multicast, broadcast or any combination of the aforementioned; | As the conversation continues, audio from the attorney will be forwarded to the client (and *vice versa*) over the telephone operator's network. The audio will go through various intermediary elements of the telephone operator's network. The call may be either point-to-point (unicast) or a conference call (multicast). |
| **detecting a termination** of said forwarding; | When the telephone call is over, the attorney generates a delivery termination indication—the attorney notes the time the call concludes. |
| after said termination, **determining an extent** of said real-time media stream forwarded towards said user device; and | When the telephone call is over, the attorney determines the extent of the call—the attorney calculates how long the call lasted. |
| **logging** said extent for commercial purposes. | The attorney writes down how long the call lasted for the purpose of billing the client. |

2.    *Alice Step 2*

a)    The '622 Patent

The claims of the '622 Patent do not recite any inventive limitation that transforms the abstract idea of monitoring the delivery of information.    Claim 1, for example, requires generating both delivery-commencement and delivery-termination indications of the real-time information forwarded to the user.    It further requires verifying the operational status of the user's access to the communications network.    Independent claim 29 further adds the steps of processing streams of audio or visual information into streams of packets for forwarding over the

communications network, and forwarding the packets to users in response to selection signals received from the users.

Logging data and the "gathering of usage statistics and recordkeeping" (D.I. 32, ¶ 43 are purely routine and conventional computer functions. *Cf. Alice*, 134 S. Ct. at 2359; *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014); *OIP Technologies, Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363–64 (Fed. Cir. 2015).   Moreover, the limitations of the claims of the '622 Patent are general, not specific.   The claims do not specify what constitutes an *indication* of delivery commencement or termination (except that sometimes, but not always, it includes "time information"), how the indication is *generated*, or how an *operational status* (which sometimes, but not always, includes abnormal termination or an active/working status) is *verified*.   Notably, the patents do not disclose a novel method of logging or diagnosing network connectivity problems.     Such general, high-level descriptions "represent little more than functional descriptions of objectives, rather than inventive solutions."   *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 2014 WL 4364848, at *13 (E.D. Tex. Sept. 3, 2014) (Bryson, J., sitting by designation); *see also Ultramercial*, 772 F.3d at 716.

As TWM acknowledges, the asserted patents are directed to "a system for transmitting, receiving, and monitoring audio and video streams over the Internet."   (D.I. 32, ¶ 18).   Applying an abstract idea to a preexisting technological field does not alter the § 101 analysis. *Ultramercial*, 772 F.3d at 716 ("[U]se of the Internet does not transform an otherwise abstract idea into patent-eligible subject matter.").   Accordingly, the claims of the '622 Patent are invalid for claiming ineligible subject matter.

b)      The '686 Patent

The claims of the '686 Patent also are devoid of limitations that might "transform the nature of the claim into a patent-eligible application."   *See Alice*, 134 S. Ct. at 2355.   The only

mention of technology in claim 1, for example, is the recitation of "forwarding a real-time media stream from an intermediate server toward a user device." But as the patents acknowledge, real-time media streaming was invented by others. *See* '686 patent, col. 1:37–67. The claims do not transform known media streaming in any way. Nor does the recited "intermediate server" provide any transformation. Merely functional hardware does not transform an otherwise abstract idea into a patent-eligible invention. *See Alice*, 134 S. Ct. at 2360. And a server that is "intermediate" is functional (at best) and generic. *See, e.g., Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1338 (Fed. Cir. 2013) (finding unpatentable abstract claims that recited, among other limitations, "a server component in communication with the client component, the transaction database and the task library database"); *Open Text S.A. v. Alfresco Software Ltd*, No. 13-CV-04843-JD, 2014 WL 4684429, at *5 (N.D. Cal. Sept. 19, 2014) (holding that the recited "email server coupled to the dialog computer" was "insufficient to render the subject matter of the claim patentable").

Furthermore, the requirement that the media stream is transmitted "via unicast, multicast, broadcast or any combination of the aforementioned" is virtually no limitation at all. It covers the waterfront of information transmittal—communication to one recipient (unicast), to a group of recipients (multicast), to all recipients (broadcast), or, as the claim provides, "*any* combination of the aforementioned." Such a limitation cannot save an otherwise abstract claim. *See Alice*, 134 S. Ct. at 2358.

The **second and third steps** of the claim—detecting the termination of information delivery and then determining the extent of that delivery—do not recite a "specific way" to address a technological problem. *DDR*, 773 F.3d at 1265. Instead these steps claim concepts— "detecting" and "determining"—that are inherent in the very idea of monitoring transmitted

information in any technological context.   Unlike claims that have been found to be patent-eligible, these claims do not "specify how interactions with the Internet are manipulated to yield a desired result—a result that overrides the routine and conventional sequence of events."[6]  *Id.* at 1258.

Finally, the **fourth** step, which adds the limitation of logging the extent of the real-time stream for commercial purposes, cannot save the patent.  Logging and recording information is not an inventive concept.  As the Federal Circuit stated in *Ultramercial*, "the steps of consulting and updating an activity log represent insignificant 'data-gathering steps,' and thus add nothing of practical significance to the underlying abstract idea."  772 F.3d at 716  The same is true here. Accordingly, the claims of the '686 Patent are invalid for claiming ineligible subject matter.

B.      The '187 and '005 Patents

The '187 and '005 Patents are both drawn to methods and systems of delivering information and then monitoring and recording aspects of that delivery.  All of the independent claims of both patents involve some combination of the following elements: preparing information for delivery, routing information to users, and monitoring and recording details of the delivery.

| Claim 1 of the '005 patent | | Claim 1 of the '187 patent |
|---|---|---|
| A method for transmitting message packets over a communications network comprising the steps of: | | A method for transmitting message packets over a communications network comprising the steps of: |

---

[6]      *See also Intellectual Ventures I, LLC v. Motorola Mobility LLC*, No. CV 11-908-SLR, 2015 WL 846532, at *7 (D. Del. Feb. 24, 2015) ("Although IV argues that the invention consists of more than the application of an abstract concept on a computer by virtue of reciting a 'specific technological solution,' the claims generically recite the steps of 'presenting,' 'sending,' and 'receiving,' with no description of the underlying programming.").

| Claim 1 of the '005 patent | | Claim 1 of the '187 patent |
|---|---|---|
| **converting** *at least one stream* of audio and/or visual information into *at least one stream* of addressed digital packets complying with the specifications of a network communication protocol, | **Preparing information for delivery** | **converting** a *plurality of streams* of audio and/or visual information into *a plurality of streams* of addressed digital packets complying with the specifications of a network communication protocol, |
| for each stream, **routing** such stream to one or more users, | **Delivering information** | for each stream, **routing** such stream to one or more users, |
| **controlling the routing** of the stream of packets in response to selection signals received from the users, and | | **controlling the routing** of the stream of packets in response to selection signals received from the users, and |
| **monitoring the reception** of packets by the users and | **Monitoring & Recordkeep-ing** | **monitoring the reception** of packets by the users and |
| **accumulating records** that indicate **which streams of packets were received by which users**, wherein at least one stream of packets comprises an audio and/or visual selection and the **records** that are accumulated **indicate the time that a user starts receiving** the audio and/or visual selection | | **accumulating records** that indicate **which streams of packets were received by which users**, wherein at least one stream of packets comprises an audio and/or visual selection and the **records** that are accumulated **indicate the time that a user starts receiving** the audio and/or visual selection and the **time that the user stops receiving** the audio and/or visual selection. |

The '187 Patent differs from the '005 Patent in two minor respects only. First, rather than reciting the conversion of "at least one stream" of audio and/or visual information, the '187 Patent calls for conversion of "a plurality of streams" of audio and/or visual information. Second, it records the time a user starts and stops receiving the audio and/or visual selection.

### 1.    *Alice Step 1*

The '187 and '005 Patents, like the '622 and '686 Patents, are directed solely to the abstract idea of monitoring the delivery of information.   Consider the following hypothetical involving the '187 Patent:[7]

| **Claim 1 of the '187 Patent** | **Commercial Telephone Network** |
|---|---|
| A method for transmitting message packets over a communications network comprising the steps of: | A public switched telephone network company connects callers over a network. |
| **converting** a plurality of streams of audio and/or visual information into a plurality of streams of addressed digital packets complying with the specifications of a network communication protocol, | The telephone network converts voice conversations into streams of voice data suitable for transmission. |
| for each stream, **routing** such stream to one or more users, | The telephone company routes each voice data stream to the caller on the other end. |
| **controlling the routing** of the stream of packets in response to selection signals received from the users, and | The telephone company directs the voice data to the other end of the call in response to the phone number entered by the caller. |
| **monitoring the reception** of packets by the users and | The telephone company detects the maintenance of the call connection. |
| **accumulating records** that indicate **which streams of packets were received by which users**, wherein at least one stream of packets comprises an audio and/or visual selection and the **records** that are accumulated **indicate the time that a user starts receiving** the audio and/or visual selection and the **time that the user stops receiving** the audio and/or visual selection. | For purposes of billing, the telephone company keeps records of start and stop times, and of the called party so that it can determine whether the call was long distance, and if so, what tariff applies. |

### 2.    *Alice Step 2*

The claims of the '005 and '187 Patents add nothing inventive to the age-old abstract idea of monitoring the delivery of information.

---

[7]      The analysis is identical for the '005 Patent.

The **first "converting" step** of the claims does not specify what communication network protocol is called for nor does it describe a technique or specific way of performing the conversion.  The specification describes a variety of already-existing protocols such as TCP and UDP, none of which the inventors claim to have developed.  *See* '187 Patent, col. 1:22–25, 42–44.

The **second "routing" step** does not specify any method or technique for routing. Indeed, this claim element does not even specify what is routed or to whom it is routed.  The specification describes a variety of routing techniques—including unicast, broadcast, and multicast—none of which the inventors can take credit for having developed.  *See id.* at 1:25–64.

The **third "controlling" step** adds yet another purely functional limitation—"controlling the routing of the stream of packets in response to selection signals received from the users"— but never explains how the route is controlled in response to users' content selections.  As explained above, there is nothing inventive—much less technological—in controlling the route of a communication.  Telephone companies have been doing so for a century, and these patents do not purport to invent a new method of network routing.  Instead, the claims recite the function of routing without meaningful limitations.   *See DDR*, 773 F.3d at 1259; *see also Messaging Gateway Solutions, LLC v. Amdocs, Inc.*, No. CV 14-732-RGA, 2015 WL 1744343, at *5 (D. Del. Apr. 15, 2015) (suggesting that a section 101 problem would arise if a patent contained no "meaningful limitations that prevent it from preempting the abstract idea of receiving, translating, and delivering a message").

Finally, the **last steps** recite the monitoring and recording of transmitted information but do not specify a way to do it.  The Federal Circuit has already held that a similar claim

element—a step reciting the recording of transactions to an activity log—failed to transform the underlying abstract idea into patent-eligible subject matter. *Ultramercial*, 772 F.3d at 715–16.

Considering each claim as an "ordered combination" also adds nothing inventive. *Alice*, 134 S. Ct. at 2359–60. As in *Alice*, the "claims do not, for example, purport to improve functioning of the computer itself." "Nor do they effect an improvement in any other technology or technical field. Instead, the claims at issue amount to nothing significantly more than an instruction to apply the abstract idea . . . using some unspecified, generic computer." *Id.* Accordingly, the claims of the '005 and '187 Patents are invalid for claiming ineligible subject matter.

**C.      The '237 Patent**

Like the other Asserted Patents, the '237 Patent concerns a method for delivering information and monitoring information about the delivery. The '237 Patent goes on to add a series of security steps. But the inventors did not claim to have invented new security methods; rather, these steps recite nothing more than purely conventional and routine security measures using generic computer functionality. In short, there is nothing that would make the claims patent-eligible.

**1.      *Alice Step 1***

The '237 Patent is directed to the abstract idea of securely delivering information and logging details about that delivery. This idea is similar to ideas courts have found to be abstract, such as securely controlling the release of confidential information in establishing anonymous communications, or securely delivering medical records. *See, e.g.*, *Walker Digital, LLC v. Google, Inc.*, 66 F. Supp. 3d 501, 505–15 (D. Del. 2014); *MyMedicalRecords, Inc. v. Walgreen Co.*, No. 2:13-CV-00631-ODW SH, 2014 WL 7339201, at *2–5 (C.D. Cal. Dec. 23, 2014). These courts recognized that keeping sensitive information secure is not a new idea; it is a

longstanding commercial practice.   In particular, media providers have long delivered their content in ways designed to make sure that only those who pay for that content receive it—for obvious reasons.

Moreover, the abstract idea of these claims can be performed without the use of a computer.  Consider the following hypothetical involving Claim 1:

| Claim 1 of the '237 patent | Checking out a tape from a  library |
|---|---|
| A computer-implemented **method for securely playing a media stream**, the method comprising, on a client computer: | |
| **communicating with an administration server to authenticate the client computer** for communication, via a communications network, with one or more servers of a set of servers, the set of servers including the administration server, a control server and a media server, wherein the administration server, the control server and the media server are different servers; | A prospective college student registers with the college's registrar's office. |
| **upon authentication, receiving a security token** for use in requesting streaming media; | Upon registration, the student gets her student ID card. |
| **displaying a list of user-selectable media streams available for playing**, wherein the list is obtained from a server of the set of servers; | The student enters the college library, showing the ID card, and consults the library's catalogue of material. |
| **detecting a selection of a media stream** from the displayed list of user-selectable media streams; and | The student finds a tape she wants to check out. |
| in response to detecting the selection of the selected media stream:<br><br>    **transmitting, to the control server, a request** for respective information enabling the client computer to request the selected media stream, wherein the request for the respective information includes the security token; | The student obtains from the catalogue the catalogue call number for the tape. |
|     receiving, from the control server, the respective information; | |

| Claim 1 of the '237 patent | Checking out a tape from a library |
|---|---|
| **transmitting, to the media server**, a request for delivery of the selected media stream to the client computer, wherein the request is based at least in part on the respective information and includes the security token; | The student provides her ID card and call number to the librarian, and requests that the librarian obtain the tape. |
| **receiving, from the media server, the selected media stream**; | The student receives the desired tape. |
| **transmitting, to a server of the set of servers, information related to delivery of the selected media stream to the client computer so as to enable remote logging of information related to delivery** of the selected media stream to the client computer; and | The library records the fact the student has checked out the tape. |
| **playing the selected media stream** at the client computer. | The student listens to the tape. |

In short, the majority of the claim limitations are directed to the basic idea of securely delivering media in response to a selection from a user.[8]

    2.    *Alice Step 2*

The '237 Patent's claim limitations add nothing inventive to the abstract idea of securely providing information and recording details about that delivery. Although the '237 Patent's claims recite certain computer hardware elements—a series of servers connected over a communication network—this is insufficient to transform the claim into patent-eligible matter.

---

[8]    The Federal Circuit has identified the abstract idea embodied in a patent by looking to "the concept embodied by the majority of the limitations" in a claim. *Ultramercial*, 772 F.3d at 715 (holding that "[a]lthough certain additional limitations, such as consulting an activity log, add a degree of particularity, the concept embodied by the majority of the limitations describes only the abstract idea of showing an advertisement before delivering free content"); *see also Hewlett Packard Co. v. ServiceNow, Inc.*, Case No. 14-cv-570, 2015 WL 1133244, at *5–6 (N.D. Cal. Mar. 10, 2015) (applying the "majority of the limitations" approach in identifying an abstract idea).

*See Content Extraction*, 776 F.3d at 1347–48.  The '237 Patent's claims involve routine and conventional activity.  Claim 1, for example, recites four basic functionalities: (1) authentication and security; (2) distributing tasks between servers; (3) selecting and playing media; and (4) recordkeeping.  Nothing here is inventive.

**Authentication and security**: Consumers have used usernames and passwords to access computer systems well before the patented invention, and the use of security tokens was also well known.  The claims recite **_no detail_** regarding how authentication occurs, how security tokens are generated, or what the security token contains.  The patent assumes the gaps in the claims can be filled with the prior art.

**Distribution of tasks among servers:**  The '237 Patent claims recite generic computers with functional descriptions: an administration server, a control server, a media server, and a client computer.  This distribution of functionality among various servers is not inventive.  First, neither the patent nor the claims require anything other than generic servers, characterized solely by their conventional functionality.  "A generic system component does not become any less generic through the addition of a functional description."  *Netflix, Inc. v. Rovi Corp.*, No. 11-CV-6591 PJH, 2015 WL 4345069, at *14 (N.D. Cal. July 15, 2015).  Here, the '237 Patent's use of functional descriptors like "administration" and "control" fail to transform the recited generic computers into a patent-eligible invention.[9]  Second, there is nothing inventive about breaking down a task and distributing various subtasks to different actors.  Indeed, the court in *Appistry, Inc. v. Amazon.com, Inc.*, Case No. C15-311 (W.D. Wash. July 9, 2015) recently invalidated two

---

[9]     *Cf. Ubicomm, LLC v. Zappos IP, Inc.*, 2013 WL 6019203, at *4 (D. Del. Nov. 13, 2013) (Andrews, J.) (holding that claims "requiring at least two computers, at least one of which is stationary and at least one of which is mobile" were directed to an abstract idea because "these limitations are no more than the incorporation of a generic computer into the claim, which is not sufficient to make an abstract idea patentable").

patents with claims directed to a similar distributed-computer architecture: "That computers are capable of dividing a task between two or more linked computers in order to complete the task more quickly and more efficiently is similarly basic." *Appistry*, 2015 WL 4210890, at *4.

*Selecting and Playing Media:* Displaying a list, detecting a selection from that list, and then acting on it are also well known steps. Responding to user input and executing user selections or instructions are what computers do. *See, e.g.*, *Motorola Mobility*, 2015 WL 846532, at *7–8 (holding that presenting a directory of software updates, selecting and transmitting the desired updates, and receiving the updates are conventional computer functions). Playing media is also not inventive. *See Ultramercial*, 772 F.3d at 715 ("The process of receiving copyrighted media, selecting an ad, offering the media in exchange for watching the selected ad, displaying the ad, allowing the consumer access to the media, and receiving payment from the sponsor of the add all describe an abstract idea, devoid of a concrete or tangible application.").

*Recordkeeping:* Like the other four Asserted Patents, the claims of the '237 Patent recite basic data-gathering steps that add nothing inventive to the claims. *See OIP Tech.*, 788 F.3d at 1363-64 (holding that "gathering statistics" about customer responses does not "provide a meaningful limitation on the abstract idea [because] [t]hese processes are well-understood, routine, conventional data-gathering activities that do not make the claims patent eligible").

If the individual components discussed above are taken as an ordered combination, the claims still lack an inventive concept. The '237 Patent did not invent a new method of authentication; it describes a generic login procedure with a username and password. '237 Patent, 14:19–22. Further, there is nothing inventive about first seeking information on how to request media before actually requesting it. And once the media is obtained, the natural thing to do is to play it. Simply put, even as an ordered combination of steps, there is nothing in the

claims that amounts to anything significantly more than the abstract idea implemented with generic computer functions. Accordingly, the claims of the '237 Patent are invalid for claiming ineligible subject matter.

### D. All of the Claims of the Asserted Patents Are Linked to the Same Abstract Ideas

This Court may consider a representative claim from each of the asserted patents without specifically addressing every claim in detail. *Content Extraction and Transmission LLC v. Wells Fargo Bank Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014); *see also Inventor Holdings, LLC v. Bed Bath & Beyond Inc.*, No. CV 14-448-GMS, 2015 WL 5000838, at *1 n.2 (D. Del. Aug. 21, 2015) ("The court concludes that the claims are directed to the same abstract idea such that addressing each claim [is] not necessary").

Here, the other claims of the Asserted Patents recite nothing more than conventional and trivial variations on the representative claims discussed above. For example, several claims specify that the recited "communications network" may take various forms, such as the Internet, a satellite network, a cable TV network, or a private data network.[10] These claims simply limit the underlying idea to "a particular technological environment," which does not transform a patent-ineligible abstract idea into a patent-eligible invention. *See Alice*, 134 S. Ct. at 2357–59.

Similarly, a number of dependent claims specify that the transmitted content may take the form of advertising information, video information, and audio information (including "music" and "copyrighted music").[11] These variations on the *types of content* do not transform an abstract idea into a patent-eligible application of that idea. *See Amazon.com*, 2015 WL 3757497,

---

[10]     *See, e.g.*, '622 Patent, claims 20, 21, 22, & 23; '686 Patent, claims 2, 20 & 27; '237 Patent, claim 3.

[11]     *See, e.g.*, '622 Patent, claim 11; '686 patent, claims 10, 11, & 20; 187 Patent, claims 2, 10, 12, 13, 17, 20, 23, 24, 29, 31, 34, 37 & 41; '005 Patent, claims 15 & 42; '237 Patent, claims 2 & 47.

at *13 (holding that dependent claims specifying music and text media content were insufficient to save a patent from the realm of unpatentable abstraction).[12]

Other dependent claims recite transmitting messages concerning the operational status of the user's access to the communications network, noting when the operational status includes abnormal termination, noting the time or duration of the information delivery, recording the content of the information, and storing or recording the commencement and termination indications.[13]  All of these claims are basic variations on the concept of data gathering.  The Federal Circuit has repeatedly held that data-gathering steps do not transform an abstract claim into a patent-eligible invention.  *OIP Tech.*, 788 F.3d at 1363–64; *Ultramercial*, 772 F.3d at 715–16; *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1370 (Fed. Cir. 2011).

Finally, the Asserted Patents' other claims recite various functional concepts, such as monitoring a user device,[14] combining multiple media streams,[15] and selecting an intermediate server.[16]  These additional dependent claims broadly claim various functions but ***never recite how any of these functions are carried out***.[17]  This is the precise problem the Supreme Court

---

[12]   A number of dependent claims call for the information to be compressed or decompressed.  *See. e.g.*, '187 Patent, claims 14, 15, 16, 25, 26, 43, 44, 45,& 46; '005 Patent, claims 17, 18, 19, 20, 21, 22, 34, 35, 36, 37, 38, 56, 57, 58, 59, 60, 61, & 62. Notably, however, the specification itself makes clear that compression and decompression are not inventive features of the patents.  *See* '622 Patent, 5:28-32 (noting that compression and decompression "are not critical to the overall operation of the system").

[13]   *See, e.g.*, '622 Patent, claims 2, 3, 6, 7, 8, 9, 10, 11, 12, 25, 30, 31, 32 & 33; '686 Patent, claims 5, 6, 7, 8, 9, & 41; '187 Patent, claims 5, 6, 12, 13, 17, 22, 23, 24, 27, 31, 36, & 37; '005 Patent, claims 5, 15, 16, 24, 41, 43, 40, & 64; 237 Patent, claim 8.

[14]   *See, e.g.*, '686 Patent, claims 12, 13, 14, 15, & 39.

[15]   *See, e.g.*, '686 Patent, claim 28.

[16]   *See, e.g.*, '686 Patent, claims 31 & 32.

[17]   *See IpLearn, LLC v. K12 Inc.*, No. CV 11-1026-RGA, 2014 WL 7206380, at *2 (D. Del. Dec. 17, 2014) (invalidating as abstract a patent claiming ideas of instruction, evaluation, and review without specifying how each step was to be carried out); *Comcast IP Holdings I, LLC v. Sprint Commc'ns Co. L.P.*, No. CV 12-205-RGA, 2014 WL 3542055
(Continued . . .)

sought to curb through the formulation of the *Alice* test.  *See* 134 S. Ct. at 2358 ("Stating an abstract idea while adding the words 'apply it' is not enough for patent eligibility.").

In sum, all of the claims of the Asserted Patents recite trivial and functional limitations that fail to transform the underlying abstract ideas into patent-eligible subject matter.

## VI.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court find the Asserted Patents invalid under 35 U.S.C. § 101 and dismiss the Third Amended Complaint.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Paul Saindon*
Jack B. Blumenfeld (#1014)
Paul Saindon (#5110)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
psaindon@mnat.com
   *Attorneys for Defendants Comcast Cable*
   *Communications, LLC, Comcast Interactive*
   *Media, LLC, NBCUniversal Media, LLC*
   *and NBCUniversal, LLC*

ROSS ARONSTAM & MORITZ LLP

*/s/ Benjamin J. Schladweiler*
Benjamin J. Schladweiler (#4601)
100 S. West Street
Suite 400
Wilmington, DE 19801
(302) 576-1600
bschladweiler@ramllp.com
   *Attorneys for Defendants Verizon Services*
   *Corp. and Verizon Online LLC*

---

(. . . continued)
   (D. Del. July 16, 2014) (invalidating claim that failed to specify who or what received the request or made the determination); also *Intellectual Ventures I, LLC v. Motorola Mobility LLC*, No. CV 11-908-SLR, 2015 WL 846532 (D. Del. Feb. 24, 2015) (invalidating patent that recited the "steps of presenting, sending, and receiving with no description of the underlying programming").

OF COUNSEL:

Brian Ferrall
Paven Malhotra
David J. Rosen
KEKER & VAN NEST LLP
633 Battery Street
San Francisco, CA 94111
(415) 391-5400
   *Attorneys for Defendants Comcast Cable*
   *Communications, LLC, Comcast Interactive*
   *Media, LLC*


Steven Lieberman
Brian Rosenbloom
Derek Dahlgren
ROTHWELL, FIGG, ERNST & MANBECK, P.C.
607 14th Street, N.W., Suite 800
Washington, DC 20005
(202) 783-6040
   *Attorneys for Defendants NBCUniversal*
   *Media LLC, and NBCUniversal, LLC*


September 4, 2015

OF COUNSEL:

Thomas M. Dunham
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006-3817
(212) 282-5000

Kurt A. Mathas
Sarah J. Kalemeris
WINSTON & STRAWN LLP
35 W Wacker Drive
Chicago, IL 60601
(312) 558-5600

## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2015, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on September 4, 2015, upon the following in the manner indicated:

Brian E. Farnan, Esquire                                    *VIA ELECTRONIC MAIL*
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Plaintiff*

Michael F. Heim, Esquire                                   *VIA ELECTRONIC MAIL*
Leslie V. Payne, Esquire
Micah J. Howe, Esquire
R. Allan Bullwinkel, Esquire
HEIM, PAYNE & CHORUSH L.L.P.
600 Travis Street, Suite 6710
Houston, TX  77002-2912
*Attorneys for Plaintiff*

Parker C. Folse III, Esquire                               *VIA ELECTRONIC MAIL*
Brooke A.M. Taylor, Esquire
Rachel S. Black, Esquire
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA  981001-3000
*Attorneys for Plaintiff*

/s/ Paul Saindon
Paul Saindon (#5110)