IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TWO-WAY MEDIA LTD.,<br><br>                        Plaintiff;<br><br>   v.<br><br>COMCAST CABLE COMMUNICATIONS, LLC, COMCAST INTERACTIVE MEDIA, LLC, NBCUNIVERSAL MEDIA LLC, and NBCUNIVERSAL, LLC,<br>                        Defendants. | Civil Action No. 14-1006-RGA |
| TWO-WAY MEDIA, LTD.,<br><br>                        Plaintiff;<br><br>   v.<br><br>VERIZON SERVICES CORP. and VERIZON ONLINE LLC,<br>                        Defendants. | Civil Action No. 14-1212-RGA |

## MEMORANDUM OPINION

Joseph J. Farnan, III, Esq., Brian E. Farnan, Esq., Michael J. Farnan, Esq., FARNAN LLP, Wilmington, DE; Parker C. Folse, III, Esq. (argued), Rachel S. Black, Esq., Brooke A.M. Taylor, Esq., Jenna G. Farleigh, Esq., SUSMAN GODFREY L.L.P., Seattle, WA; Michael F. Heim, Esq., Leslie V. Payne, Esq., Micah J. Howe, Esq., R. Allan Bullwinkel, Esq., HEIM, PAYNE & CHORUSH L.L.P., Houston, TX, attorneys for Plaintiff.

Jack B. Blumenfeld, Esq., Paul Saindon, Esq., MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE, attorneys for Defendants Comcast Cable Communications, LLC, Comcast Interactive Media, LLC, NBCUniversal Media LLC, and NBCUniversal, LLC.

Brian Ferrall, Esq. (argued), Paven Malhotra, Esq., David J. Rosen, Esq., KEKER & VAN NEST LLP, San Francisco, CA, attorneys for Defendants Comcast Cable Communications, LLC and Comcast Interactive Media, LLC.

Steven Lieberman, Esq. (argued), Derek Dahlgren, Esq., ROTHWELL, FIGG, ERNST & MANBECK, P.C., Washington, D.C., attorneys for Defendants NBCUniversal Media LLC and NBC Universal, LLC.

Benjamin J. Schladweiler, Esq., ROSS ARONSTAM & MORITZ LLP, Wilmington, DE; Thomas M. Dunham, Esq., WINSTON & STRAWN LLP, Washington, D.C.; Kurt A. Mathas, Esq., Sarah J. Kalemeris, Esq., WINSTON & STRAWN LLP, Chicago, IL, attorneys for Defendants Verizon Services Corp. and Verizon Online LLC.

August 15, 2016

*[signature]*
**ANDREWS, U.S. DISTRICT JUDGE:**

Pending before the Court is Defendants' joint Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c). (D.I. 37; C.A. No. 14-1212 D.I. 28).[1] The matter has been fully briefed. (D.I. 38, 43, 45; C.A. No. 14-1212 D.I. 29, 34, 36). The Court heard oral argument on October 29, 2015. (D.I. 54). For the reasons stated below, the Court will grant in part Defendants' motion with respect to the asserted claims of the '187, '005, '622, and '686 patents and dismiss in part as moot Defendants' motion with respect to the asserted claims of the '237 patent.

## I. BACKGROUND

Plaintiff Two-Way Media Ltd. ("Two-Way") filed these patent infringement actions against Comcast Cable Communications, LLC, Comcast Interactive Media, LLC (collectively, "Comcast"), NBCUniversal Media LLC, and NBCUniversal, LLC (collectively, "NBCUniversal") on August 1, 2014, (D.I. 1), and against Verizon Services Corp. and Verizon Online LLC (collectively, "Verizon") on September 19, 2014, (C.A. No. 14-1212 D.I. 1). Two-Way alleged that Comcast, NBCUniversal, and Verizon infringed U.S. Patent Nos. 5,778,187 ("the '187 patent"); 5,983,005 ("the '005 patent"); 6,434,622 ("the '622 patent"); 7,266,686 ("the '686 patent"); and 8,539, 237 ("the '237 patent"). On August 1, 2016, the Court granted a stipulation of dismissal without prejudice of the claims between Two-Way and NBCUniversal. (D.I. 151). On August 4, 2016, the Court granted a stipulation of partial dismissal with prejudice of Two-Way's '237 patent infringement claims against Comcast and Verizon (collectively, "Defendants"). (D.I. 150). The § 101 motion presently under consideration is therefore dismissed as moot with respect to the '237 patent claims.

---

[1] Citations to "D.I. __" are citations to the docket in C.A. No. 14-1006 unless otherwise noted.

1

The '187, '005, '622, and '686 patents (the "asserted patents") are each entitled "Multicasting Method and Apparatus." ('187 patent, (54); '005 patent, (54); '622 patent, (54); '686 patent, (54)). The asserted patents have a common parent application and are directed to a "scalable architecture . . . for delivery of real-time information over a communications network." ('187 patent, (Abstract); '005 patent, (Abstract); '622 patent, (Abstract); '686 patent, (Abstract)).

## II. LEGAL STANDARD

### A. Motion for Judgment on the Pleadings

A Rule 12(c) motion for judgment on the pleadings is reviewed under the same standard as a Rule 12(b)(6) motion to dismiss when the Rule 12(c) motion alleges that the plaintiff failed to state a claim upon which relief can be granted. *See Turbe v. Gov't of the Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991); *Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010). The court must accept the factual allegations in the complaint and take them in the light most favorable to the non-moving party. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002). "When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The Court may also consider matters of public record and authentic documents upon which the complaint relies if those documents are attached to the complaint or as an exhibit to the motion. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). Additionally, the Court may take judicial notice of the factual record of a prior proceeding. *See Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416 n.3 (3d Cir. 1988). The court must "draw on its judicial experience and common sense" to make the determination whether plaintiff failed to state a claim upon which relief can be granted. *See id.*

2

## B. Patent-Eligible Subject Matter

Section 101 of the Patent Act defines patent-eligible subject matter. It provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has recognized an implicit exception for three categories of subject matter not eligible for patent protection: laws of nature, natural phenomena, and abstract ideas. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). The purpose of these carve outs is to avoid preemption of the "basic tools of scientific and technological work." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012) (internal quotation marks omitted); *Alice Corp.*, 134 S. Ct. at 2354. Still, "a process is not unpatentable simply because it contains a law of nature or a mathematical algorithm," as "an application of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection." *Mayo Collaborative Servs.*, 132 S. Ct. at 1293–94 (emphasis and internal quotation marks omitted).

In *Alice*, the Supreme Court reaffirmed the framework laid out in *Mayo* for distinguishing "patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." 134 S. Ct. at 2355. Under the first step of the *Alice* framework, the court must determine whether the claims are directed to a patent-ineligible concept. *Id.* "The dispositive inquiry is whether the concept to which a claim is drawn has 'no particular concrete or tangible form.'" *Morsa v. Facebook, Inc.*, 77 F. Supp. 3d 1007, 1014 (C.D. Cal. 2014) (quoting *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014), *cert. denied sub nom. Ultramercial, LLC v. WildTangent, Inc.*, 135 S. Ct. 2907 (2015)), *aff'd*, 622 F. App'x 915 (Fed. Cir. 2015); *see also Accenture Global Servs., GmbH v.*

3

*Guidewire Software, Inc.*, 728 F.3d 1336, 1341 (Fed. Cir. 2013) ("[T]he court must first identify and define whatever fundamental concept appears wrapped up in the claim." (internal quotation marks omitted)). To evaluate whether an invention is directed to an "abstract idea," courts "compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). "[F]undamental economic and conventional business practices are often found to be abstract ideas, even if performed on a computer." *Id.* at 1335. Not "all improvements in computer-related technology are inherently abstract," however. *Id.* Nor are "claims directed to software, as opposed to hardware, . . . inherently abstract and therefore only properly analyzed at the second step of the *Alice* analysis." *Id.* Thus, in analyzing claims directed to computer-related technology under the first step of the *Alice* framework, a relevant question is "whether the focus of the claims is on the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Id.* at 1335–36.

If the court concludes that the claims are drawn to a patent-ineligible concept under the first step of the *Alice* framework, it must next look to "the elements of each claim both individually and as an 'ordered combination,'" *id.* at 1334, to see if there is an "'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice Corp.*, 134 S. Ct. at 2355 (alteration and internal quotation marks omitted). "[T]he prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of the formula to a particular technological environment or adding insignificant postsolution activity." *Bilski v. Kappos*, 561 U.S. 593, 610–11 (2010) (internal quotation marks omitted). Similarly,

4

"[s]imply appending conventional steps, specified at a high level of generality, . . . [i]s not enough to supply an inventive concept." *Alice Corp.*, 134 S. Ct. at 2357 (internal quotation marks and emphasis omitted). Further, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* at 2358.

## III. ANALYSIS

### A. Claim Construction

Two-Way argues that Defendants' motion is premature because claim construction is necessary to determine patent eligibility under § 101. (D.I. 43 at 14–15). In accordance with an order of the Court (D.I. 54 at 34–35; D.I. 64), Two-Way identified the claim terms it contends need construction and offered its proposed constructions. (D.I. 61, 70). Defendants do not dispute that the Court should consider this motion in light of Two-Way's proposed claim constructions. Defendants maintain that Two-Way's proposed constructions do not alter the § 101 analysis. (*See* D.I. 71-1 at 1).

The validity of asserted claims under § 101 is a "threshold inquiry" for the court to decide as a matter of law. *In re Bilski*, 545 F.3d 943, 950 (Fed. Cir. 2008), *aff'd*, *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). At the pleading stage, to the extent the § 101 question of law is informed by subsidiary factual issues, those facts are to be construed in the light most favorable to Plaintiff. *See TriPlay, Inc. v. WhatsApp Inc.*, 2015 WL 1927696, at *5 n.5 (D. Del. Apr. 28, 2015), *adopted in part, rejected in part*, 2015 WL 4730907 (D. Del. Aug. 10, 2015); *Shortridge v. Found. Constr. Payroll Serv., LLC*, 2015 WL 1739256, at *7 (N.D. Cal. Apr. 14, 2015), *aff'd*, 2016 WL 3742816 (Fed. Cir. July 13, 2016). Because "the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter," it is often necessary to resolve claim construction disputes prior to a § 101 analysis. *Bancorp Servs., LLC*

5

*v. Sun Life Assurance Co. of Canada (U.S.)*, 687 F.3d 1266, 1273–74 (Fed. Cir. 2012). Still, the Federal Circuit has "never set forth a bright line rule requiring district courts to construe claims before determining subject matter eligibility." *Ultramercial, LLC v. Hulu, LLC*, 657 F.3d 1323, 1325 (Fed.Cir.2011), *vacated on other grounds sub nom. WildTangent, Inc. v. Ultramercial, LLC*, 132 S. Ct. 2431 (2012). Early resolution of § 101 issues, where appropriate, is desirable. *I/P Engine, Inc. v. AOL Inc.*, 576 F. App'x 982, 996 (Fed. Cir. 2014) (Mayer, J., concurring), *cert. denied*, 136 S. Ct. 54 (2015); *see also BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC*, 2016 WL 3514158, at *4 (Fed. Cir. June 27, 2016) ("Courts may therefore dispose of patent-infringement claims under § 101 whenever procedurally appropriate."). *But see BASCOM Global*, 2016 WL 3514158, at *8 (Newman, J., concurring) ("[I]nitial determination of eligibility often does not resolve patentability, whereas initial determination of patentability issues always resolves or moots eligibility."). Thus, resolution of a § 101 dispute at the pleading stage is proper if claim construction is unnecessary, *see Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 F. App'x 988, 991 n.1 (Fed. Cir. 2014), or if there is "no reasonable construction that would bring [the asserted claims] within patentable subject matter." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 719 (Fed. Cir. 2014) (Mayer, J., concurring) (internal quotation marks omitted), *cert. denied sub nom. Ultramercial, LLC v. WildTangent, Inc.*, 135 S. Ct. 2907 (2015); *see also Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (construing claims in the manner most favorable to patentee on § 101 motion decided before formal claim construction), *cert. denied*, 136 S. Ct. 119 (2015).

For the reasons stated above, I adopt Two-Way's proposed constructions for purposes of this motion. (*See* D.I. 61, 70).

6

## B. Prior §§ 102 and 103 Analyses

Two-Way urges the Court to consider materials that relate to the asserted patents from prior proceedings before the PTO and in federal courts. (D.I. 43 at 14 & n.6). Two-Way argues that the proffered materials "demonstrate[] how [its] invention[s] solved specific technical problems and added significant inventive concepts over the prior art." (*Id.* at 14). Two-Way encourages the Court to take judicial notice of the proffered materials because patentability under § 101 is a question of law that may be informed by subsidiary factual issues and because the Court must accept all factual allegations in Two-Way's complaint as true and view them in the light most favorable to Two-Way. (*Id.* at 10, 14). If the Court decides not to consider the proffered factual materials in deciding the § 101 motion for judgment on the pleadings, Two-Way requests in the alternative that the Court either convert the motion to a motion for summary judgment or grant Two-Way leave to file a Fourth Amended Complaint attaching the proffered materials. (*Id.* at 15 & n.7).

The proffered materials are irrelevant to the § 101 motion for judgment on the pleadings. None of the materials addresses a § 101 challenge to claims of the asserted patents. (*See* D.I. 44-1–D.I. 44-24). The novelty and nonobviousness of the claims under §§ 102 and 103 does not bear on whether the claims are directed to patent-eligible subject matter under § 101. *See Diamond v. Diehr*, 450 U.S. 175, 188–92 (1981); *see also Genetic Techs. Ltd. v. Bristol-Myers Squibb Co.*, 72 F. Supp. 3d 521, 529 n.7 (D. Del. 2014) (not considering reexaminations, which evaluate invalidity based only on prior art, in deciding § 101 motion), *aff'd sub nom. Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369 (Fed. Cir. 2016). The history of conception of the invention and commercial embodiments of the invention are also irrelevant to the issues to be decided under § 101. *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355–60

(2014) (examining "the claims at issue" and "the elements of the claims" in deciding patent eligibility under § 101). Because the proffered materials are irrelevant to the instant § 101 issue, I have not considered them.

Further, I will not convert the motion to a motion for summary judgment. Conversion to summary judgment is generally not appropriate where, as here, only the nonmoving party has introduced evidentiary exhibits in response to a motion to dismiss or a motion for judgment on the pleadings. *See Kenexa BrassRing, Inc. v. HireAbility.com, LLC*, 2015 WL 1943826, at *4 (D. Mass. Apr. 28, 2015) (declining to convert a motion for judgment on the pleadings to a motion for summary judgment where only the nonmovant submitted documents outside the pleadings); *Crockett & Myers, Ltd. v. Napier, Fitzgerald & Kirby, LLP*, 401 F. Supp. 2d 1120, 1122 (D. Nev. 2005) (declining to convert a motion to dismiss for the same reason). Additionally, Two-Way's request to file a Fourth Amended Complaint is denied without prejudice. Two-Way's request is premised on the view that, if it were part of the record under consideration, the proffered evidence would be relevant to the instant decision. (*See* D.I. 43 at 15 n.7). Because the proffered evidence is irrelevant to the § 101 determination, however, I see no reason to grant Two-Way's request for leave to file an amended complaint.

## C. '187 and '005 Patents

Claim 1 of the '187 patent is representative of the '187 and '005 patent claims and reads:[2]

1. A method for transmitting message packets over a communications network comprising the steps of:

---

[2] The Federal Circuit has held that the district court is not required to individually address claims not asserted or identified by the non-moving party, as long as the court identifies a representative claim and "all the claims are substantially similar and linked to the same abstract idea." *Content Extraction*, 776 F.3d at 1348 (internal quotation marks omitted). Two-Way acknowledges that claim 1 of the '187 patent is representative of the claims of the '187 and '005 patents. (D.I. 43 at 15).

8

> converting a plurality of streams of audio and/or visual information into a plurality of streams of addressed digital packets complying with the specifications of a network communication protocol,
>
> for each stream, routing such stream to one or more users,
>
> controlling the routing of the stream of packets in response to selection signals received from the users,
>
> and
>
> monitoring the reception of packets by the users and accumulating records that indicate which streams of packets were received by which users, wherein at least one stream of packets comprises an audio and/or visual selection and the records that are accumulated indicate the time that a user starts receiving the audio and/or visual selection and the time that the user stops receiving the audio and/or visual selection.

('187 patent, 18:17–34; D.I. 26 at 53; *see also* '005 patent, 18:44–59 (replacing "a plurality of streams" with "at least one stream" in the "converting" step)).

Defendants argue that the '187 and '005 patents "are directed solely to the abstract idea of monitoring the delivery of information." (D.I. 38 at 17). In Defendants' view, that idea represents a fundamental business practice "similar to the idea of tracking a user's spending, which this Court has deemed abstract." (*Id.* at 10–11). Regarding step two, Defendants contend that the claimed "converting," "routing," "controlling," "monitoring," and "recording" steps do not, separately or as an ordered combination, amount to significantly more than an instruction to apply the abstract idea using a generic computer. (*Id.* at 18–19).

Two-Way contends that the '187 and '005 patents are directed to the concrete task of "audio/visual streaming in a packet-switched architecture that facilitates efficient and reliable transmission, while also implementing specific forms of monitoring and recordkeeping." (D.I. 43 at 15). Two-Way argues that the claimed steps recite "a specific and concrete (*i.e.*, non-abstract) way of processing the streams [of audio/visual information]." (*Id.* at 15–17). Regarding step two, Two-Way argues that the patents supply an inventive concept because they

9

claim elements that are directed to solving the technological problems of load, bottlenecking, and inadequate records. (*Id.* at 17–18).

The '187 and '005 patents are directed to the abstract idea of (1) sending information, (2) directing the sent information, (3) monitoring receipt of the sent information, and (4) accumulating records about receipt of the sent information. (*See* '187 patent, 18:17–34; '005 patent, 18:44–59; *see also* D.I. 61 at 2 (describing "controlling the routing" as "directing a portion of the routing path")). The claims are thus directed to methods of sending and monitoring the delivery of audio/visual information. Although the claims are limited to the context of audio/visual streaming in a packet-switched communications network, they are not directed to an invention that improves streaming audio/visual content in a packet-switched network. (*See, e.g.,* '187 patent, 18:17–34; '005 patent, 18:44–59; *see also* (D.I. 43 at 17)); *Electric Power Group, LLC v. Alstom S.A.*, No. 2015-1778, slip op. at pp. 8, 11–12 (Fed. Cir. Aug. 1, 2016) (holding that the claims at issue were directed to an abstract idea because "the focus of the claims [wa]s not on . . . an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools" and distinguishing between "ends sought and particular means of achieving them, between desired results (functions) and particular ways of achieving (performing) them"); *cf. Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016) (finding that the claims at issue were not directed to an abstract idea because "the plain focus of the claims is on an improvement to computer functionality itself, not on economic or other tasks for which a computer is used in its ordinary capacity"). Thus, the '187 and '005 patents claim abstract ideas.

Two-Way argues that the inventive concept supplied by the '187 and '005 patents is the disclosed computer architecture, which solves the technological problems of load, bottlenecking,

10

and inadequate records. (D.I. 43 at 17–18). The patent specifications do, in fact, point to the architecture of the system as the technological innovation. (*See, e.g.*, '187 patent, 2:3–5, 3:55–59 (describing the patented invention as "a scalable architecture for delivery of real-time information over a communications network," which is described further as "a distribution architecture integrated with a control architecture"); '005 patent, 2:6–9, 3:58–60 (same)). None of the claims, however, recite or refer to anything that could be described as an architecture.[3] (*See, e.g.*, '187 patent, 18:17–34; '005 patent, 18:44–59). Even if I accept that the architecture described in the patent specification is designed to solve the technological problems of load, bottlenecking, and inadequate records, the fact remains that the claims do not recite the mechanism by which those problems are solved. *See Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015) (holding that a claim directed to the abstract idea of "retaining information in the navigation of online forms" did not supply an inventive concept because the claim "contain[e]d no restriction on how the result is accomplished[, that is, t]he mechanism for maintaining the state [of data on a web page] is not described, although this is stated to be the essential innovation"). The claims therefore do not supply the inventive concept of a particular computer architecture. Further, the limitation regarding accumulating records about the receipt of sent information does not supply an inventive concept. (*See* '187 patent, 18:28–34; '005 patent, 18:55–59); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363–64 (Fed. Cir. 2015) (holding that "gathering statistics" regarding customer responses was "routine, conventional data-gathering" that did not supply an inventive concept).

---

[3] The claims cannot fairly be read to recite computer architecture even in light of Two-Way's proposed claim constructions, some of which explicitly incorporate the words "intermediate computers." (*See* D.I. 61 at 1–2; D.I. 70).

11

Because the '187 and '005 patents claim an abstract idea and the claims are not limited to a specific application of that abstract idea, the '187 and '005 patent claims are patent ineligible under § 101.

## D. '622 Patent

Claim 1 of the '622 patent reads:[4]

1. A method for monitoring the forwarding of real-time information to at least one user having access to a communications network comprising:
    generating delivery-commencement indications of real-time information forwarded to the user by means of the communications network, wherein the real-time information comprises a plurality of packets forwarded over the communications network to the user,
    verifying the operational status of the user's access to the communications network during delivery of the real-time information, and
    generating delivery-termination indications of the real-time information forwarded to the user.

('622 patent, 18:38–49; D.I. 1-1 at 44).

Defendants contend that the '622 patent, like the '187 and '005 patents, is directed to the abstract idea of "monitoring the delivery of information." (D.I. 38 at 10, 17). Regarding step two, Defendants assert that the claims at issue add only "routine and conventional computer functions." (*Id.* at 13). Further, Defendants argue that the limitations are general, high-level functional descriptions that do not constitute inventive solutions. (*Id.*).

Two-Way contends that the '622 patent claims are patent eligible at step one because they are "limited to a specific implementation for streaming real-time information over a packet-switched network." (D.I. 43 at 19). Regarding step two, Two-Way asserts that the '622 patent

---

[4] Two-Way does not concede that claim 1 of the '622 patent is representative for purposes of this § 101 motion. (D.I. 43 at 18–19). In particular, Two-Way points to claim 29 as adding "further network-based limitations" that confirm that "the '622 invention is limited to a specific implementation for streaming real-time information over a packet-switched network." (*Id.* at 19).

12

provides an inventive concept because it "overcomes the challenges of providing real-time streaming media over traditional packet-based networks." (*Id.* at 20).

On their faces, claims 1 and 29 of the '622 patent are directed to monitoring the delivery of real-time information to a user or users. ('622 patent, 18:38–49, 20:19–37). Monitoring the delivery of real-time information to a user or users is similar to concepts previously found to be abstract. For example, the Federal Circuit in *BASCOM Global* held that "filtering content on the Internet" is an abstract idea. 2016 WL 3514158, at *5. The Federal Circuit has also held that claims focused "on collecting information, analyzing it, and displaying certain results of the collection and analysis" were directed to an abstract idea. *Electric Power Group, LLC*, No. 2015-1778, slip op. at p. 6.

The claims do not disclose an inventive concept sufficient to render them patent eligible. Limiting the claims to the particular technological environment of "real-time stream delivery over packet-based networks" is insufficient to transform them into patent-eligible applications of the abstract idea to which they are directed. (D.I. 43 at 21); *see Alice Corp.*, 134 S. Ct. at 2358; *Electric Power Group, LLC*, No. 2015-1778, slip op. at pp. 9–10. Further, the claim 1 limitations that require verifying that information is being received by its intended recipient and noting when information delivery has ceased do not add anything to routine methods of delivering information. (*See* '622 patent, 18:46–49; D.I. 43 at 20). Similarly, the claim 29 limitation requiring forwarding a stream from an intermediate computer only when the user selects it does not add anything inventive to the idea of sending information only to one who requests it. (*See* '622 patent, 20:27–28; D.I. 43 at 20). Nothing in the claims requires anything other than conventional computer and network components operating according to their ordinary functions. (*See* '622 patent, 1:26–65, 18:38–49, 20:19–37); *Electric Power Group, LLC*, No.

2015-1778, slip op. at p. 11 (holding that the claims "do not state an arguably inventive concept in the realm of application of the information-based abstract ideas" because the claims "do not include any requirement for performing the claimed functions of gathering, analyzing, and displaying in real time by use of anything but entirely conventional, generic technology"). Nor is the limitation to "real-time" information sufficient to supply an inventive concept rendering the claims patent eligible. (*See* D.I. 70 at 4). In *LendingTree, LLC v. Zillow, Inc.*, the court held that "simultaneous competition" for loans over the internet did not supply an inventive concept sufficient to render claims to the abstract idea of a loan-application clearinghouse patent eligible. 2016 WL 3974203, at *5; *see also Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1318 (Fed. Cir. 2016) (holding that claims to a computer system that made it possible for multiple lenders to compete simultaneously for a potential borrower's business did not amount to an inventive concept). Thus, the claims of the '622 concept do not supply an inventive concept sufficient to render them patent eligible.

The '622 patent claims at issue therefore fail to meet the standard for patent eligibility under § 101.

### E. '686 Patent

Claim 1 of the '686 patent reads:[5]

1. A method for metering real-time streaming media for commercial purposes, said method comprising:
    forwarding a real-time media stream from an intermediate server toward a user device, wherein said forwarding of said real-time media stream from said intermediate server to said user device is via unicast, multicast, broadcast or any combination of the aforementioned;
    detecting a termination of said forwarding;

---

[5] Two-Way does not concede that claim 1 of the '686 patent is representative for purposes of this § 101 motion. (D.I. 43 at 22–23). Specifically, Two-Way points to claims 22, 26, 30, and 38 as confirming that the '686 patent invention is a patent-eligible computer network implementation. (*Id.*).

> after said termination, determining an extent of said real-time media stream forwarded toward said user device; and
> logging said extent for commercial purposes.

('686 patent, 18:16–27; D.I. 1-2 at 42).

Defendants contend that, like the '187, '005, and '622 patents, the '686 patent is directed to the abstract idea of "monitoring the delivery of information." (D.I. 38 at 10–12). Regarding step two, Defendants assert that the claims at issue merely recite generic, conventional technology and generic concepts "that are inherent in the very idea of monitoring transmitted information in any technological context." (*Id.* at 14–15).

According to Two-Way, the claims are patent eligible at step one because they are directed to "specific computer architectures for metering the forwarding of real-time streaming media over a network." (D.I. 43 at 21). Regarding step two, Two-Way asserts that the claims at issue supply an inventive concept in that they transform known media streaming by incorporating an intermediate server and using a specific network transmission mode in real-time, one-to-many media streams on a computer network. (*Id.* at 23–24).

Claim 1 of the '686 patent is directed to measuring the delivery of real-time information for commercial purposes. ('686 patent, 18:16–17). Claims 22, 26, 30, and 38 are likewise directed to measuring the delivery of real-time information for commercial purposes. (*Id.* at 19:20–22, 19:39–52, 20:6–17, 21:16–30; *see* D.I. 43 at 22–23). Measuring the delivery of real-time information for commercial purposes is a commercial practice akin to those previously found to be abstract. *See, e.g., Alice Corp.*, 134 S. Ct. at 2357 (holding that claims directed to intermediated settlement were abstract); *Ultramercial, Inc.*, 772 F.3d at 715–16 (holding that the claims at issue recited the abstract idea of using advertising as currency on the Internet). Further, measuring the delivery of information is analogous to the abstract idea of collecting and

15

analyzing information. *See Electric Power Group, LLC*, No. 2015-1778, slip op. at p. 6 (holding claimed focused on "collecting information, analyzing it, and displaying certain results of the collection and analysis" to be directed to an abstract idea); *BASCOM Global*, 2016 WL 3514158, at *5 (holding that claims to "filtering content on the Internet" "do not readily lend themselves to a step-one finding that they are directed to a nonabstract idea"); *see also supra* Part III.D (discussion of '622 patent).

The '686 patent claims do not disclose an inventive concept sufficient to render them patent eligible. Limiting the claims to the "realm of a computer network" is insufficient, on its own, to render the claims patent eligible. *Alice Corp.*, 134 S. Ct. at 2358; *Electric Power Group, LLC*, No. 2015-1778, slip op. at pp. 9–10. That the patent discusses the invention in the context of a specific network transmission mode in real-time, one-to-many media streams on a computer network does not supply an inventive concept because the claims do not specify a technological improvement to measuring information delivery using such a network. (*See* D.I. 43 at 23); *cf. BASCOM Global*, 2016 WL 3514158, at *6 (finding inventive concept in "the installation of a filtering tool at a specific location, remote from the end users, with customizable filtering features specific to each end user[,]" because it "gives the filtering tool both the benefits of a filter on a local computer and the benefits of a filter on the ISP server"). Further, although the steps recite computer components—for example, the intermediate server in the "forwarding" limitation of claim 1—those components merely perform their conventional functions. (*See* '686 patent, 1:45–65, 18:16–27; D.I. 43 at 22; D.I. 54 at 21–23); *see also Electric Power Group, LLC*, No. 2015-1778, slip op. at p. 10 ("Nothing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information."); *cf. DDR Holdings,*

16

*LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257–58 (Fed. Cir. 2014) (holding claims patent eligible because they modified conventional website display mechanics to produce hybrid website display). The additional limitations recited in claims 22, 26, 30, and 38 also include merely generic computer components and conventional steps, and therefore do not supply inventive concepts. (*See* '686 patent, 19:20–22, 19:39–52, 20:6–17, 21:16–30).

For the reasons stated above, the '686 patent claims fail to meet the standard for patent eligibility under § 101.

## IV. CONCLUSION

For the reasons stated above, the asserted claims of the '187, '005, '622, and '686 patents are directed to patent-ineligible subject matter under 35 U.S.C. § 101. Defendants' Motion for Judgment on the Pleadings (D.I. 37) is **GRANTED IN PART** with respect to the asserted claims of the '187, '005, '622, and '686 patents and **DISMISSED IN PART** as moot with respect to the asserted claims of the '237 patent. An appropriate order will be entered.